IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2006

## STATE OF TENNESSEE v. JOHN ANTHONY GUST

**Direct Appeal from the Circuit Court for Marshall County**
**No. 16818     Robert Crigler, Judge**

_____

**No. M2006-00846-CCA-R3-CD - Filed December 29, 2006**

_____

Following a jury trial, the defendant, John Anthony Gust, was convicted of forgery over $1000, a Class D felony, and theft up to $500, a Class A misdemeanor. He was sentenced as a Range I, standard offender to two years for the felony conviction and eleven months, twenty-nine days for the misdemeanor conviction, with the sentences to be served concurrently. On appeal, he argues that the evidence is insufficient to support his convictions. Based upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Andrew Jackson Dearing, III, Assistant Public Defender, for the appellant, John Anthony Gust.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charles F. Crawford, District Attorney General; and Melissa L. Thomas and William B. Bottoms, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At trial, Julie Johnson, a cross trainer and teller at the Bank of America in Lewisburg, testified that on August 1, 2005, the defendant presented to her a $2500 check drawn from the account of Vital Signs & Graphics and made payable to the defendant. Because the defendant was not a Bank of America customer, Johnson obtained two identifications, including his driver's license, and a thumbprint from the defendant. When she compared the signature of the signatory, Jimmy R. Nicholson, on the check with his signature on two previous checks, Johnson noticed that the signatures did not match. She then called the bank's signature verification department and obtained by fax a copy of the customer's signature card. She also called Jimmy Nicholson to inquire if he had

written the check and informed her manager of the situation. The police were called, and she later gave the defendant's driver's license, the check, the signature card, and the two check printouts to her manager and a police officer.

Jim Nicholson, the owner of Vital Signs & Graphics, testified that during July and August 2005, his son, Mark Nicholson, was living with him and his wife and was employed at his business. He said that only he and his wife had check writing privileges on the business account at Bank of America. He said that his son, who had a drug problem, disappeared sometime around the first of July 2005. Nicholson said that he was unaware that any company checks were missing until the Bank of America representative called to inform him that someone was attempting to cash a check from his business account. He instructed the bank representative not to cash the check because he had not written it. When he checked to see if any additional checks were missing, Nicholson discovered that "six individual checks out of different checkbooks and one full checkbook was gone." He said that he reported the stolen checks to the Franklin Police Department and was later notified that his son had attempted to cash one of the checks at a bank in Williamson County. Nicholson said that he had seen his son write his name on previous occasions and that the signature on the check was consistent with how his son signed his name. Nicholson said that he did not know the defendant and that the defendant had never worked for him.

Sergeant Jerry Broyles of the Lewisburg Police Department testified that he was dispatched to the Bank of America on August 1, 2005, in response to a call from the bank regarding a man with a check which was believed to be forged. After seeing the defendant, who fit the description the bank had given, talking to a teller, Sergeant Broyles stood about eighteen feet away to observe him for a few minutes. The defendant, who "was getting real nervous, fidgety," then decided to leave and walked past Sergeant Broyles "in a real fast walk." Sergeant Broyles followed the defendant to the door and asked him if he had tried to cash a check. The defendant admitted that he had done so and said that he had left the check inside the bank. When Sergeant Broyles asked the defendant why he had left the check behind, the defendant offered no explanation. Sergeant Broyles called for backup and, after Officer Rebecca Mitchell arrived, the officers and the defendant went inside the bank manager's office to discuss the matter. The defendant told the officers that he was a painter and that he "had worked for the check." Sergeant Broyles then stepped outside the room and called Nicholson to inquire about the check. Nicholson informed Sergeant Broyles that he had not signed the check.

Officer Rebecca Mitchell of the Lewisburg Police Department testified that she responded to Sergeant Broyles's call for backup. She said that the defendant, who was wearing a t-shirt bearing the Vital Signs & Graphics logo, told her and Sergeant Broyles that he had received the check for some painting work he had done for the company. She took a statement from Julie Johnson and collected the check the defendant presented to Johnson, the defendant's driver's license, the request for signature verification submitted by Johnson, and the two previous checks written from the same account. She later turned the items over to Detective Dac Burrow.

Detective Dac Burrow testified that he interviewed the defendant at the police station on August 1, 2005, after advising him of his Miranda rights and obtaining his signature on a waiver of rights form. He said that the defendant was wearing a shirt bearing the logo of Vital Signs & Graphics. Detective Burrow then read into evidence the defendant's statement:

> I arrived in Lewisburg, Tennessee, this morning with Mark Nicholson. We got a room at the Walking Horse Lodge in Lewisburg, Tennessee. Mark handed me this check in the amount of $2500 on Vital Signs and Graphics. Mark asked me to cash the check and he would give me $500 to help me out becuse of my financial problems and to help me out. The rest of the money Mark and I were going to use for a vacation. We were going to head south and go to the Gulf Coast. This is the only check that I have passed.
>
> In the past few weeks I have taken Mark to the Bank of America in Franklin, Tennessee, to cash checks two times. We were also going to Georgia to see some of Mark's family there.

Asked if the defendant told him that he assumed the check was "good," Detective Burrow said, "He kept on saying that Mark gave him the check. We went over it as far as Mark writing it out. He said Mark gave him the check and told [him] he would help [him] out and give [him] $500 for cashing it for him."

The defendant elected not to testify and rested his case without presenting any proof.

## ANALYSIS

The defendant argues that the evidence is insufficient to support his convictions, saying that the proof at trial did not show that he knew the check was forged.

In Tennessee, the results reached by a jury in a criminal trial are afforded great weight. See State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995). On appeal from a guilty verdict, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

The defendant was convicted of forgery over $1000 and theft of property up to $500. Forgery is defined, in pertinent part, as follows:

(a) A person commits an offense who forges a writing with intent to defraud or harm another.

(b) As used in this part, unless the context otherwise requires:

(1) "Forge" means to:

(A) Alter, make, complete, execute or authenticate any writing so that it purports to:

(i) Be the act of another who did not authorize the act;

. . . .

(C) Issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of subdivision (b)(1)(A)[.]

Tenn. Code Ann. § 39-14-114(a), (b)(1)(A)(i), (C) (2003).

Theft of property is defined as: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103 (2003). If the value of the property is $500 or less, the theft is a Class A misdemeanor. Id. § 39-14-105(1).

The proof at trial established that the defendant presented a check, drawn from the business account of Vital Signs & Graphics, to a teller at the Bank of America and became nervous and attempted to flee when he spotted a uniformed police officer in the bank, leaving the check and his driver's license behind. Jim Nicholson, the owner of Vital Signs & Graphics, testified that he did not write the check and that the signature on the check was consistent with the manner in which his son, Mark Nicholson, signed his name. In his statement to Detective Burrow, the defendant acknowledged that Mark Nicholson had given him the check and offered him $500 in exchange for cashing the check. Based on all of this, we conclude that reasonable jurors could have determined that the defendant committed the offenses of forgery over $1000 and theft up to $500.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE